UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Andrea Tanner,**

        **Plaintiff,**

      **-v-**           **5:10-CV-1308 (NAM)**

**Carolyn W. Colvin,** Acting Commissioner of Social
Security, in place of Michael Astrue,

        **Defendant.**


✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Olinsky Law Group
Howard D. Olinsky, Esq., of counsel
300 S. State Street, Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

Hon. Richard S. Hartunian, United States Attorney
Andreea L. Lechleitner, Esq., Special Assistant United States Attorney
Social Security Administration
Office of Regional General Counsel, Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

After the initial denial of her application for Supplemental Security Income, plaintiff requested a hearing. Administrative Law Judge ("ALJ") John P. Ramos held a hearing on August 12, 2009, at which plaintiff testified. By decision dated November 3, 2009, the ALJ determined that plaintiff was not disabled under the Social Security Act from April 25, 2007 to November 3,

2009. On September 10, 2010, the Appeals Council denied plaintiff's request for review; thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").

Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). She asks the Court to reverse the Commissioner's decision denying benefits and to remand the matter for payment of benefits. In the alternative, she asks the Court to remand the matter to the ALJ for consideration of a report of Dr. Cynthia Starkey, which she contends should be considered as new and material evidence. As set forth below, the Court grants plaintiff's motion for judgment on the pleadings insofar as it seeks reversal and remand (Dkt. Nos. 12, 13), denies defendant's motion for judgment on the pleadings (Dkt. No. 14), reverses the Commissioner's decision, and remands for further administrative proceedings.

## THE ADMINISTRATIVE RECORD

The Commissioner's brief states: "The Commissioner hereby incorporates the summaries of the procedural history and statement of facts set forth by plaintiff in her brief, with the exception of any inferences or conclusions asserted by plaintiff. The Commissioner also incorporates the summary of the facts contained in the ALJ's decision." Because there is no significant dispute regarding the facts in the record, the Court does not summarize them here.

## THE ALJ DECISION

To be eligible for Supplemental Security Income, plaintiff must meet the income and resource requirements of 42 U.S.C. §§ 1382a and 1382b and establish that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Her impairment must be of such severity that "[she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B). The impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The ALJ conducted the five-step analysis for evaluating disability claims. This process, mandated by the regulations, *see* 20 C.F.R. § 404.1520, is as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (citations and alterations omitted). At the first step, the ALJ found that plaintiff was not engaged in substantial gainful activity. At the second step, the ALJ found that plaintiff had the following "severe impairments" that "significantly limit[] [her]... mental ability to do basic work activities": bipolar disorder type II, substance abuse disorder (in remission), and alcohol abuse disorder (in partial remission). *See* 20 C.F.R. § 416.920(c). He further found that plaintiff's alleged disabling symptoms from irritable

-3-

bowel syndrome and bilateral shoulder tendinitis were not severe in that they did "not more than minimally affect the claimant's ability to engage in basic work activity."

The third step requires a determination of whether, based solely on the medical evidence, plaintiff had an impairment listed in Appendix 1 of the Regulations. 20 C.F.R., Pt. 404, Subpt. P, App. 1. "These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995). The ALJ concluded that plaintiff's impairments did not meet or medically equal the severity of the listed impairments, specifically listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance abuse disorders). He found that, because the claimant's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied. He further found that the paragraph C criteria of listings 12.04 and 12.06 were not satisfied.

In reaching his Step 3 determination, the ALJ relied primarily on the report of Jeanne A. Shapiro, Ph.D., a consultative examiner who evaluated plaintiff at the Commissioner's request. The ALJ wrote as follows:

> The claimant was consultatively examined for the Administration by Jeanne Shapiro, Ph.D., in August 2007. The claimant told Dr. Shapiro that she was able to dress, bathe and groom herself on a daily basis. She said that she could cook and prepare little meals, and do general cleaning and laundry. She said that she shopped late at night. The claimant looked her stated age and was appropriately dressed with good hygiene and grooming. The claimant planned a wedding and gave birth to a child. She maintained herself and her child in the community.
>
> In social functioning, the claimant has mild difficulties. At the consultative

-4-

> examination [with Dr. Shapiro], the claimant's manner of relating, social skills, and overall presentation were adequate. Her gait, posture, and motor behavior were normal. Her eye contact was appropriate. Her speech intelligibility was fluent, and her expressive and receptive language skills were adequate. Her mood was calm, and she appeared relaxed and comfortable. Medical records indicate that she socialized and enjoyed activities with friends.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Shapiro indicated a rule out borderline intellectual functioning on Axis II. However there is no evidence of this as the claimant attended regular education classes, obtained her GED and told Dr. Shapiro that she had taken some college courses. Her thought processes were coherent and goal-directed with no evidence of delusions, hallucinations or disordered thinking. She was oriented times three. Her attention, concentration, and memory were intact.
>
> As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. In making this determination, the undersigned considered the 1999 suicide attempt as an episode of decompensation.

(Citations to record omitted.) In reaching his Step 3 determination, the ALJ also "basically adopted" the report of E. Kamin, a psychology consultant who reviewed the file and determined that the claimant had mild restriction in activities of daily living, and moderate difficulties in social functioning and concentration, persistence or pace, and no episodes of deterioration, each of extended duration.

In addressing Step 4 (plaintiff's residual functional capacity), the ALJ observed that the residual functional capacity assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." He wrote:

> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can only perform simple, routine, repetitive tasks consistent with unskilled work, provided that she does not interact with supervisors on more than an occasional basis, does not interact with co-workers or the public on more than an occasional basis, and performs in a static, routine work setting.

-5-

In this regard, the ALJ considered plaintiff's hearing testimony; noted that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; and found, based on the medical evidence, that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The ALJ wrote that he gave "some weight" to E. Kamin's opinion and "substantial weight" to the opinion of Dr. Shapiro. In granting "little weight" to the opinion of plaintiff's treating psychiatrist, Paula Zebrowski, M.D., the ALJ wrote that Dr. Zebrowski's assessment that plaintiff was unable to work due to depression and anxiety "is conclusory and unsupported by detailed narrative," and adds: "The doctor's progress notes show mental status examinations that were basically within normal limits and good response to medication when the claimant was compliant with medication."

In Step 5, based on plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.969 and 416.969(a))." He concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since April 25, 2007, the date the application was filed[.]"

## DISCUSSION

Plaintiff asks the Court to remand the matter for consideration of the report of Cynthia Starkey, L.M.H.C., Ed.D. on the ground that it is new and material evidence relating to the time period at issue. Under the sixth sentence of 42 U.S.C. § 405(g), a court may order the Commissioner to consider additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record

-6-

in [the] prior proceeding[.]" 42 U.S.C. § 405(g); *see Viglietta v. Metropolitan Life Ins. Co.*, 454 F.3d 378, 379 (2d Cir. 2006).[1] Section 405(g) thus requires a showing "that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (citations and quotation marks omitted). In addition, "[t]he concept of materiality requires a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Id.*

Dr. Starkey began treating plaintiff no later than June 5, 2009 at Liberty Resources (Brownell Center), where plaintiff had been receiving treatment since November 18, 2008. In Part 1 of the report, concerning whether plaintiff's "ability to understand, remember, and carry out instructions [was] affected by the impairment," Dr. Starkey indicated that plaintiff had "marked" restriction in her ability to understand and remember simple and complex instructions and carry out simple instructions, and "extreme" restriction in her ability to carry out complex instructions and make judgments on simple and complex work-related decisions. Asked to

---

[1] The sixth sentence of section 405(g) provides in pertinent part:
> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

identify the factors (*e.g.*, the particular medical signs, laboratory findings, or other factors) that supported her assessment, Dr. Starkey wrote: "Bipolar II disorder - high levels of agitation, mood disorder, mood fluctuations, borderline personality disorder, irritability, depression, and inability to work with people appropriately." On Part 2 of the form, Dr. Starkey indicated that plaintiff had an "extreme" restriction in interacting appropriately with the public, supervisors, and co-workers and responding appropriately to usual work situations, and a "marked" restriction in responding appropriately to changes in a routine work setting. Asked to identify the factors (*e.g.*, the particular medical signs, laboratory findings, or other factors) supporting her assessment, Dr. Starkey wrote: "See Dr. Hunt's psychological report." Part 3 of the form asked whether there were any other capabilities affected by the impairment. Dr. Starkey responded, "Yes," and, where asked to identify the capability and describe how it is affected, she wrote: "taking public transportation, working with people. She has explosive tendencies and is unable to work with the public at this time. She has been diagnosed with bipolar disorder, PTSD." Asked to identify the factors (*e.g.*, the particular medical signs, laboratory findings, or other factors) supporting her assessment, Dr. Starkey again wrote: "See Dr. Hunt's report." There is no report from Dr. Hunt in this record. Plaintiff contends that Dr. Starkey's report "would have provided the ALJ substantial evidence at Step 2 for the determination of severe impairments, such as PTSD, mood and borderline personality disorders, evidence of marked and extreme impairments at Step 3 for a determination of Listing 12.04, and evidence at Steps 4 and 5 for the determination of whether Tanner's impairments limit her from past or future work."

Dr. Starkey's report is clearly new and not cumulative of the evidence already in the record. Indeed, it differs markedly from Dr. Shapiro's report, upon which the ALJ relied almost

exclusively in his analysis at Steps 3 and 4.  The Commissioner argues, however, that Dr. Starkey's report is not material because there is no reasonable possibility that it would have influenced the Commissioner to decide plaintiff's application differently.  In support of this argument, the Commissioner contends that Dr. Starkey is not an "acceptable medical source" for purposes of determining whether plaintiff has a physical or mental impairment, *see* 20 C.F.R. § 416.913(a)(1),(2), because Dr. Starkey, who lists her qualifications as L.M.H.C. (Licensed Mental Health Counselor) and Ed.D. (Doctor of Education), is not a licensed physician or licensed or certified psychologist.[2]  The Court cannot resolve the question of Dr. Starkey's qualifications on the present record.  Even if Dr. Starkey's opinion is treated merely as "other source" evidence, however, it is material on the issues of "the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work."  20 C.F.R. § 416.913(d).  The Court notes in particular that in many respects Dr. Starkey's report supports plaintiff's testimony regarding her symptoms, whereas the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's findings in Step 4, which he based almost exclusively on the opinion of Dr. Shapiro.

The importance of Dr. Starkey's report is highlighted by the fact that the ALJ did not properly apply the treating physician rule in his handling of the opinion of plaintiff's treating

---

[2] One unpublished Second Circuit decision and a number of district court cases have referred to people with Ed.D. degrees as psychologists. *See, e.g., Parker-Grose v. Astrue*, 462 Fed.Appx. 16, 18 (2d Cir. 2012); *Ellis v. Commissioner of Social Sec.*, 2012 WL 5464632, *7 (N.D.N.Y. Sept. 7, 2012); *Babcock v. Barnhart*, 412 F.Supp.2d 274, 282 (W.D.N.Y. 2006).  It appears that a person with an Ed.D. degree may qualify for licensure as a psychologist under N.Y. Education Law § 7603(2), which provides that to qualify for a license as a psychologist, an applicant shall, *inter alia*, "have received an education, including a doctoral degree in psychology, granted on the basis of completion of a program of psychology registered with the department or the substantial equivalent thereof, in accordance with the commissioner's regulations."  (Emphasis added.)  *See also* 8 N.Y.C.R.R. § § 52.10.

psychiatrist, Paula Zebrowski, M.D. In Steps 3 and 4, the ALJ placed "substantial weight" on the opinion of Dr. Shapiro, a consultative examiner who did not treat plaintiff but rather evaluated plaintiff once at the Commissioner's request, and "some weight" on the opinion of E. Kamin, a psychology consultant who merely reviewed plaintiff's files, while placing "little weight" on the opinion of Dr. Zebrowski. On this issue, the ALJ merely wrote:

> As for the opinion evidence, in May 2007, Paula Zebrowski, M.D., the claimant's treating psychiatrist, opined in a JOBSplus assessment that the claimant was not able to work due to depression and anxiety. Little weight is granted to that opinion as it is conclusory and unsupported by detailed narrative. The doctor's progress notes show mental status examinations that were basically within normal limits and good response to medication when the claimant was compliant with medication. The determination of disability under the Social Security Act is reserved to the Administrative Law Judge.

Where "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). Here, the ALJ apparently concluded that Dr. Zebrowski's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with the other substantial evidence. To override the opinion of a treating physician, however, "the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). The ALJ did not adequately address these factors. Nor did he make any effort to develop the record in this important respect. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The ALJ's

-10-

summary rejection of the opinion of plaintiff's treating psychiatrist Dr. Zebrowski was improper, particularly because Dr. Zebrowski's opinion was largely consistent with plaintiff's own testimony and differed significantly from the opinions of non-treating consultants Dr. Shapiro and E. Kamin upon which the ALJ relied.

With respect to whether plaintiff has shown good cause for failing to present Dr. Starkey's report sooner, plaintiff notes that her representative requested the evidence and was granted an extension to obtain it, but it did not arrive until after the Appeals Council issued its decision. In any event, remand for further administrative proceedings is warranted based on the treating physician rule. Dr. Hunt's psychological report, referenced in Dr. Starkey's report, should be considered as well. The Court leaves it within the discretion of the ALJ to determine on remand whether to obtain a consultative intelligence examination and/or a vocational expert, or otherwise develop the record regarding plaintiff's impairments, their severity, and their effect on her ability to work during the time period in question.

## CONCLUSION

It is therefore

ORDERED that plaintiff's motion (Dkt. Nos. 12, 13) for judgment on the pleadings is granted insofar as it seeks reversal and remand (Dkt. Nos. 12, 13); and it is further

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 14) is denied; and it is further

ORDERED that the Commissioner's decision is reversed; and it is further

ORDERED that the matter is remanded further administrative proceedings in accordance herewith.

IT IS SO ORDERED.

DATED: May 28, 2014
        Syracuse, New York

Norman A. Mordue
U.S. District Judge